# SUPREME COURT.

DAVID A. WHITBECK and JOHN B. WHITBECK, executors of, &c. of ANDREW WHITBECK, deceased agt. JOHN L. ROWE and ELIZABETH his wife, JOHN I. ROWE and others.

Where *mortgage premises* lay together, contiguous and adjoining, and appear to have always been controlled by a single person, it is in the sound *discretion* of the *referee* to sell such premises, on a foreclosure of the mortgage, *together or in parcels*. And the careful and honest exercise of such discretion will not be disturbed by the court.

Where, after a sale of mortgaged premises, the *mortgagor* and a *judgment creditor* make application for a resale on the ground of a previous collusive and fraudulent agreement and combination between bidders, affecting the sale, such agreement and combination must be established by proof beyond a reasonable doubt, to authorize the court to order a resale of the premises.

Where a sale of mortgaged premises has been conducted fairly and in good faith, and it appears from evidence that they brought their real value at the time, a resale will not be ordered on the ground of *surprise and disappointment in the proceedings at the sale*, where there is no satisfactory evidence of any misconduct on the part of the purchaser, or from any other cause such surprise, mistake or misapprehension has occurred.

There is no rule of equity which permits the courts to set aside a sale in the absence of fraud, misconduct, surprise or well-grounded misapprehension, simply because a *higher price can be reasonably anticipated* on a resale of the premises.

*Albany General Term, December,* 1862.

HOGEBOOM, PECKHAM and MILLER, *Justices.*

APPEAL by defendants, John L. Rowe, mortgagor, and wife, and John I. Rowe, judgment creditor, from an order made by Justice MILLER, at special term, denying their motion for a resale of the mortgaged premises sold by a referee under a judgment of foreclosure.

IRA SHAFER, *for respondents.*
LYMAN TREMAIN, *for appellants.*

By the court, HOGEBOOM, Justice. The defendants have, I think, a sufficient interest in the questions involved, to entitle them to make the motion decided at special term.

They found their application for a resale on three or four grounds :

1. On the ground of irregularity or illegality in not selling the premises in parcels.

2. On the ground of a fraudulent combination between bidders, affecting the sale.

3. On the ground of surprise and disappointment in regard to the proceedings at the sale.

4. On the ground of inadequacy of price and a well-founded expectation of realizing a considerable advance upon the sum bid.

1. The first ground of the motion must fail. The premises do not really consist of distinct parcels of land, but of a single property, bought together, and, so far as we know, always controlled by a single person—all lying together contiguous and adjoining, and no part in any wise separated from another part. It is a case where it was in the sound discretion of the referee to sell together or in parcels, (*Rule* 74 ;) and that discretion has been carefully and honestly exercised. And it is by no means clear that the property would sell for more in the aggregate, if sold in separate parcels, than in bulk—especially if such parcels were to be made, (as is claimed by the moving parties,) not according to the occupancy of distinct portions of the premises by different persons, but by some new and arbitrary line to be fixed by the referee. The mortgagor, having assented to the sale in one parcel, ought not to be heard, I think, now to object to it ; and none of the other moving parties having, previous to the sale, requested a sale in parcels, ought to be permitted to object to a sale in bulk, unless a sale in that mode be (as I think it is not) plainly illegal.

2. The fraudulent agreement alleged to have been made between the mortgagor, John L. Rowe, and the plaintiff, David A. Whitbeck, that the latter should purchase the whole premises at the sale, and then convey the dock por-

tion of it to the wife of the mortgagor, for $1,500, is denied. John L. Rowe is the only person who directly swears to it, and he is directly contradicted by David A. Whitbeck. William H. Rowe, the son of the mortgagor, swears in general terms that he understood from Whitbeck that the premises were to be bid off by Whitbeck, in pursuance of an agreement before made by and between Whitbeck, Rowe and Pierce. This also is explicitly denied by Whitbeck. Pierce does not swear to the contract referred to by Rowe, nor to any recognition or admission of such contract by Whitbeck; but to a conversation with Whitbeck, in which the latter said he *expected* to bid off the property, and if he did, he wanted him (Pierce) to remain in the occupation of the tavern part. This statement is also denied by Whitbeck; and even if true, comes quite short of an agreement for the purchase of the premises on certain conditions. John G. Raymond to some extent confirms the testimony of Whitbeck; for he says that Rowe informed him that he had been to see Whitbeck previous to the day of sale, and was unable to make any arrangement with him by which he could have the lower or dock portion of the premises. Rowe and Pierce are also contradicted to some extent in other but less important particulars, by Keefer and Sherman, and perhaps by others. Being in possession of the premises, they have some motive, perhaps, for prolonging the litigation; and Rowe, at least, as the mortgagor and judgment debtor, for desiring a resale of the premises at a higher price. I cannot say that the agreement is satisfactorily established, and have some doubt whether, as to the parties to it, being fraudulent in its character and tending to suppress competition at the sale, it ought to be listened to for the benefit of either of them.

3. If there was no agreement of the character supposed, and no conversation which justified an impression or expectation on the part of the Rowes or Pierce that such

an agreement existed or would be carried out, there would seem to be no sufficient ground for setting aside the sale upon the ground of surprise or the disappointment of a well-founded expectation. The plaintiffs' evidence goes the length of stating that nothing passed between the parties which could justly operate to support such a belief or expectation as the Rowes and Pierce claim to have indulged; and upon a consideration of the whole testimony, of the situation of the parties and of the probabilities of the case, I am not satisfied that there was such just ground for surprise and disappointment as should induce the court to interfere to set aside the sale upon terms. Both Rowe and Pierce bid large sums at the sale, against the bid of Whitbeck, and seem to have occupied a position distinct from if not antagonistic to him. The friends and the parties who would have made larger bids, but for the supposed agreement between Rowe and Whitbeck, are not named. It is natural to expect that they would have been specifically mentioned, and their affidavits obtained as to the facts. The Rowes are either insolvent or of very limited means, and their intention of making increased bids, but for reliance upon the supposed agreement, is not, perhaps, of much account, standing by itself. And there is some ground for the suspicion that the anticipation of a rival freighting establishment may have magnified the views of some of the witnesses as to the value of the premises, and the probability of realizing a decided advance upon the price in the event of a resale of the premises. I think the weight of the evidence is, that they brought their real value; although it is highly probable that adventitious and accidental circumstances might now operate to induce a considerably higher bid upon a resale. But this is not the question. The question is, whether the sale has been conducted with fairness and in good faith, and whether, by the conduct of the plaintiffs or from any other cause,

any such surprise, mistake, misapprehension or deception has occurred, which make it essential for the purposes of justice that a resale should take place.

4. It is quite certain that *mere* inadequacy of price, unless it be so gross as of itself to justify a suspicion of fraud, surprise or mistake, is not, standing alone, ground for the interference of the court. Parties desiring to purchase must be vigilant as well as honest—must not allow themselves to be too easily misled, or thrown off their guard even innocently, by circumstances, unless intentional deception be practiced. We have no rule of equity which permits us to set aside a sale in the absence of fraud, misconduct, surprise or well-grounded misapprehension, simply because a higher price can be reasonably anticipated on a resale of the premises—however just in theory such a rule might appear to be, if the advance in price were marked and decided.

On the whole, I am satisfied with the decision of the special term, and think that the order should be affirmed, with $10 costs of appeal.