[No. 5,601.]

# VIGOUREUX *v.* MURPHY.

SHERIFF'S SALE.—A sale in mass, under an execution, of real estate consisting of several known and distinct parcels, at a price greatly below the actual value, is *voidable*, and will be set aside upon a proper application of the judgment debtor, when made in a reasonable time after the sale; but such a sale is not *void*, and will not be set aside if the application is not made within a reasonable time. *Held*, accordingly—where in such a case the application to avoid the sale was made more than three years after the sale, by a cross-complaint to an action of ejectment brought by the suc-

cessor of the purchaser—that the application came too late, though the sale should have been vacated had the application been made immediately on the return by the sheriff, and *perhaps* in case it had been made within the time allowed for redemption.

ID.—NOTICE.—In case of such a sale, a knowledge of the judgment, execution, and advertisement, is sufficient to put the judgment debtor on his inquiry, and is in effect equivalent to a knowledge of the sale.

APPEAL from a judgment for the defendant, in the Fourth District Court, City and County of San Francisco. MORRISON, J.

The facts are stated in the opinion.

*L. C. Pettinos,* for Appellant.

The sale, if irregular, was merely voidable. (8 Barb. 9; 4 Abb. 238.) Application must be made within a reasonable time to set aside a judicial sale. (4 G. Green, Iowa, 75; *Cunningham* v. *Cassidy,* 7 Abb. 183; 6 Cal. 47; *Love* v. *Cherry,* 24 Iowa, 204; *Roberts* v. *Fleming,* 53 Ill. 196; *Riguey* v. *Small,* 60 Id. 416; *Jackson* v. *Spink,* 59 Id. 411; *Prather* v. *Hill,* 36 Id. 402; *Ross* v. *Mead,* 5 Id. 173; *Gillespie* v. *Small,* 29 Id. 481; *San Francisco* v. *Pixley,* 21 Cal. 52.) There was no excuse for the delay. (44 Ill. 380; *Greenup* v. *Stoker,* 12 Id. 24; 26 Iowa, 117; *Boyle* v. *Ellis,* 11 Id. 97.) Respondent did not actually know of said sale until January, 1876; but he knew that there was a judgment against him, and that execution and sale would follow that judgment.

*Lloyd & Newland,* for Respondent.

A sale of several lots *en masse* is void at common law. (*Reed* v. *Dwen,* 7 Port. Ind. 191; *Way* v. *Graham,* 1 Gilm. Ill. 441–3; *Winters* v. *Burford,* 6 Cold. Tenn. 328; *Ballard* v. *Anderson,* 18 Tex. 377; *Tiernan* v. *Wilson,* 6 Johns. Ch. 414; *Stewart* v. *Coes,* 5 Gilm. Ill. 444; *Rowley* v. *Brown,* 1 Binn. Pa. 61; *Meeker* v. *Evans,* 25 Ill. 323; *Nesbit* v. *Dallam,* 7 Gill & J. Md. 512.) Section 694 of the Code of Civil Procedure is mandatory. It reads: "They (the lots) *must* be sold separately." The substitution of "*must*" for "*shall,*" (as the provision read in the old law) indicates that the Legislature in-

tended to reinstate the old common-law doctrine. The decision in *San Francisco* v. *Pixley*, was based on the old law. (Prac. Act, § 223.) Under statutes similar to ours, such sales have been declared void. (*Day* v. *Graham* and *Reed* v. *Dwen*, cited *supra; Phelps* v. *Connover*, 25 Ill. 312; *Piel* v. *Brayer*, 30 Ind. 332; *Adams* v. *Keyser*, 7 Dana, Ky. 208.) The sale is at least voidable, and the appellant took the lots subject to all the equities between his grantor and the plaintiff. (*Piel* v. *Brayer*, cited *supra; Reynolds* v. *Harris*, 14 Cal. 681; Code Civ. Proc. §§ 701, 708; *Fergus* v. *Woodsworth*, 44 Ill. 378–381.)

Department No. 2, Thornton, P. J.:

The plaintiff (appellant here) brought this action to recover the possession of land in the City and County of San Francisco, which he described as one parcel by metes and bounds, concluding with these words: "Being lots numbers 463, 464, 465, 466, as laid down on Gift Map No. 2, on file in the Recorder's office of the City and County of San Francisco, State of California." The complaint was in the usual form adopted in this State for the recovery of possession of real property.

The defendant answered, denying all the material allegations of the complaint except possession by him; and for a further answer and cross-complaint, averred that he was the owner and in possession of the lots sued for, and has been the owner, and in possession of them, since the 14th day of April, 1875; that the property was on said day last named divided into four lots, and then known as lots by the numbers above stated, and so designated on a map, entitled "Gift Map No. 2," recorded in the Recorder's office of the City and County of San Francisco; that on two of these lots there was on said day, and ever since has been and now is, a large frame house of the value of $800, the same being the homestead of defendant and his family; that on or about the 21st day of March, 1873, A. Scholle caused an execution to be issued on a judgment recovered by said Scholle against defendant about the 8th of March, 1873, in the Justices' Court of said city and county, for the sum of $68.40 and $14.25 costs of suit; that the Sheriff on

the 18th day of April, 1873, sold these lots under said execution in one entire mass to Scholle for the sum of $100.35, and at the same time executed to Scholle a certificate of sale; that the Sheriff and Scholle, at the time of sale, knew of the division into four separate lots. Defendant further knew that at the time of sale these lots were each of the value of $150 gold coin, and the entire property was then of the value of $1,500; that the Sheriff sold all of them for $100.35—a sum much less than the value of one of the lots, as the Sheriff and Scholle then knew; that afterward, about the 20th of December, 1873. Scholle sold and assigned his certificate of sale to the plaintiff, who knew that the property was divided and sold *en masse* as above stated; and that about the 10th day of March, 1874, the Sheriff executed a deed of the lots to the plaintiff; that on the 20th of May, 1876, defendant offered in writing to pay to the plaintiff the amount of said judgment and the costs due on the judgment and sale, and interest on the same, amounting to $132.06, in United States gold coin, which offer plaintiff refused; that defendant is now, and has been since the offer was made, ready and willing to pay said sum to plaintiff, and brings it into Court and tenders it to plaintiff. The prayer of the cross-complaint is, that the sale may be set aside, and plaintiff be compelled to convey the lots to defendant, and for such other relief as to the Court may seem meet, and for costs.

The plaintiff answered the cross-complaint, denying all the allegations thereof, except that the Sheriff sold the property *en masse* under the judgment and execution as stated, and the offer in writing to him made by defendant on the 20th day of May, 1876. The cause was tried by the Court, the parties having waived a jury trial. The Court found the facts, and rendered judgment for defendant. From this judgment plaintiff appeals.

The complaint in this action was filed and summons issued on the 28th of March, 1876. On the 17th of June, 1876, defendant filed his answer and cross complaint, and on the 30th of August, 1876, plaintiff filed his answer to the cross-complaint.

The Court found, as facts, that on the 18th of April, 1873, and long prior thereto, the defendant owned and claimed in his

own right, and possessed the real property as described in the complaint; that defendant in 1871 built a house on two of the lots mentioned, worth about $800, and that ever since 1871 defendant and his family have occupied and resided on said lots; that each of said lots was worth from $75 to $100, and had a frontage of twenty-five feet and a depth of seventy feet; that one A. Scholle recovered a judgment in the District Court, as set out in the cross-complaint; that execution on the judgment was issued on the 21st day of March, 1873, and on the same day was levied by the Sheriff of the City and County of San Francisco, and that the Sheriff on the 18th of April, 1873, sold the four lots *en masse* at public auction for $100.35 to Scholle, and gave him a certificate of sale therefor.

The return of the Sheriff was found by the Court *verbatim.* It sets forth a levy by virtue of the execution on the judgment above mentioned, which had been previously attached in the same cause, upon the interest of the defendant in the property described as in the complaint, on the 1st day of March, 1873, the day on which the same property was attached in the same action, to be sold by him (the Sheriff) in front of the City Hall, in the City and County of San Francisco, on the 18th of April, 1873, at 12 o'clock, noon; that previous to said sale, (the Sheriff further returns) " I caused due and legal notice thereof to be published once in each week for three weeks successively, immediately before said sale, in the *Daily Examiner*, a daily newspaper published daily in the City and County of San Francisco, for the same period preceding such sale "; and that he sold the same on the 18th of April, 1873, in one parcel to A. Scholle, at public auction, according to law, for cash, the said Scholle being the highest bidder therefor, for $100 35-100 in lawful money of the United States, which was paid him by Scholle, and that he delivered to Scholle a certificate of sale therefor, and filed a duplicate of the same in the office of the County Recorder in and for the City and County of San Francisco; that he deducted from the sum above mentioned his commissions and expenses, $14.50, and applied the balance, $85.85, in full satisfaction of the execution. The Court proceeds further to find, that the Sheriff sold said lot *en masse*, and that the

notice of the sale contained a description of the lot as stated above in his return; that the property was, at the time of the sale and long prior thereto, divided into four lots; was worth about $1,100; and that these lots ever since 1871 had been inclosed by a high fence, without anything on the property to show that it was divided into lots. The Court finds the assignment of the certificate of sale by Scholle to plaintiff; the execution of the deed by the Sheriff to plaintiff of the lots in question, on the 10th of March, 1874; that plaintiff has never been in possession of these lots or any of them, and that " the defendant did not actually know of said sale until January, 1876." On these facts the Court held, as conclusions of law, that the defendant is the owner of the lots; that the sale by the Sheriff was and is illegal, and that the deed executed by the Sheriff is illegal and void, and that plaintiff is entitled to a judgment for cost; which judgment was entered accordingly, except that the judgment as entered gave the defendant cost.

There is no doubt that a sale in mass, under a writ of execution, of real estate consisting of several known and distinct parcels, at a price greatly below the actual value of the property, cannot be sustained against the objection of the judgment debtor. Such sales are not *void*, but are *voidable*, and will be set aside upon a proper application by the judgment debtor, when made in a reasonable time after such sale, where there is ground in reason for belief that it was less beneficial to the judgment creditor or debtor than it would have been had the sale been made of the separate parcels. (*San Francisco* v. *Pixley*, 21 Cal. 57. See *Page* v. *Randall*, 6 Id. 32.)

The statute makes it the duty of the Sheriff to sell such property, when it consists of " several known lots or parcels, separately." (Code Civ. Proc. § 694.) It also provides that the judgment debtor, if present at the sale, may also direct the order in which such property may be sold, " when such property consists of several known lots or parcels," and the Sheriff is bound to follow his direction. (Code Civ. Proc. § 694.)

The section of the Code of Civil Procedure just referred to is identical with § 223 of the Practice Act, which was in force when and under which *San Francisco* v. *Pixley*, above cited,

was decided. The Court, nevertheless, held the sale in that case, which was a sale of real property, consisting of several known lots or parcels, *voidable* and not *void*. This decision meets our approval.

The sale then should be set aside if the application was made by the defendant to set it aside in a reasonable time after it was made. If the application had been made immediately on the return by the Sheriff, it should have been vacated, and *perhaps* such should have been the decision of the Court had an application been made by the judgment debtor within the period of redemption. But in the case under consideration, such application was not made until more than three years after the sale. We did not see that any such resort was had until the cross-complaint was filed herein, and this did not occur until the 17th day of June, 1876—the sale having been made on the 18th of April, 1873. In our opinion, the defendant did not apply for such relief within a reasonable time.

It may be said that this *laches* on the part of the defendant may be accounted for by the fact which is found by the Court, that the defendant did not actually know of the sale until January, 1876. It will be observed, however, that this is not set up by the defendant anywhere in the answer or cross-complaint, nor is it pleaded or found that the defendant was not aware of the recovery of the judgment on the 8th of March, 1873—on which day the execution issued—of the issuance of the execution on this judgment on which the sale was made, and of the advertisement of sale by the Sheriff. These facts were sufficient to put him on inquiry, which inquiry, if it had been pursued properly, would have given him timely notice of the sale. A knowledge of these facts was in legal effect equivalent to a knowledge of the sale.

The judgment of the Court below is reversed, and the cause is remanded to the Superior Court of the City and County of San Francisco, with directions to vacate the judgment for the defendant, and to enter a judgment on the findings for the plaintiff.

SHARPSTEIN, J., and MYRICK, J., concurred.